**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **In re BIOMET M2A MAGNUM HIP IMPLANT PRODUCTS LIABILITY LITIGATION** | **CAUSE NO: 3:12-MD-2391-RLM-MGG (MDL-2391)**<br><br>This Document Relates To:<br>*Smith v. Biomet*, 3:17-cv-561-RLM-MGG |

**BIOMET DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Smith (and spouse Michelle Smith) sued Biomet for purported defects with his M2a-38™ metal-on-metal hip implant over five years after he received the implant. As early as September 2012, Plaintiff began experiencing pain that was worse than before he had gotten his first total hip replacement. And by May 15, 2015, Plaintiff had actual knowledge that he had could possibly have an infection in his hip and had his revision surgery to remove the implant. Pursuant to the laws of Ohio, Plaintiff's product liability claims needed to be brought within two years of accrual. As Plaintiff was on notice of his claim by May 15, 2015, his claims are untimely and are time barred. Summary judgment should be granted for Biomet, and all of Plaintiff's claims dismissed.

## I. STATEMENT OF MATERIAL FACTS

Plaintiff James Smith was implanted with the M2a-38 implant in his right hip on October 18, 2011. (Ex. 1, Operative Report, October 18, 2011.) The operation was performed at ProMedic Toledo Hospital in Toledo, Ohio. (Ex. 1, Operative Report, October 18, 2011.) One

of the instructions for use (Ex. 2, "IFU") accompanying this implant disclosed the following possible adverse effects:

> Material sensitivity reactions. Implantation of foreign material in tissues may result in histological reactions involving various sizes of macrophages and fibroblasts. The clinical significance of this effect is uncertain, as similar changes may occur as a precursor to or during the healing process. Particulate wear debris and discoloration from metallic and polyethylene components of joint implants may be present in adjacent tissue or fluid. It has been reported that wear debris may initiate a cellular response resulting in osteolysis or osteolysis may be a result of loosening of the implant. . . . A low incidence of metal hypersensitivity has been reported with failed metal on metal implants. The clinical relevance of these findings is unclear, and it is not known whether metal hypersensitivity causes implant failure.
>
> […]
>
> Elevated metal ion levels have been reported with metal on metal articulating surfaces. Although mechanical testing demonstrates that metal on metal articulating surfaces produce a relatively low amount of particles, the total amount of articulate produced in vivo throughout the service life of the implants remains undetermined. The long-term biological effects of the particulate and metal ions are unknown.

(Ex. 2, IFU.)

Plaintiff played no role in the selection of his implant and did not perform any research or review any literature on the subject. (Ex. 3, Smith Dep. 44-46.) He testified that he was unaware he even had a metal-on-metal implant until the time of his deposition on May 8, 2018. (Ex. 3, Smith Dep. at 58.)

Plaintiff first began experiencing pain in his hip around September of 2012. (Ex. 3, Smith Dep. 56:8-19.) He met with a surgeon on May 7, 2015, and reported that he had progressive pain in his right hip that was worse than before the surgery. (Ex. 4, Examination Notes dated May 7, 2015.) The surgeon impressions noted the possibility of a pseudotumor, and questioned whether to "change metal on metal hip or is this infected?" (Ex. 4, Examination

Notes dated May 7, 2015.) After an aspiration indicated a strep infection, a Stage I revision with a spacer placement was scheduled for May 15, 2015. (Ex. 5, Operative Report May 15, 2015.) Plaintiff underwent revision surgery on his right hip on May 15, 2015 at Cleveland Clinic Hospital in Cleveland, Ohio. (Ex. 5, Operative Report May 15, 2015.) The surgeon noted the possibility of an adverse metal-on-metal reaction, recording in the operative findings: "infected hip/well fixed components/ florid synovitis and reactive tissue- difficult to tell if much of a metal on metal pseudotumor." During the procedure, he further observed that a "large bulge of reactive tissue was identified with attempted takedown of the external rotators, which had been pretty much invaded by the infectious process and metal-on-metal entity." Plaintiff underwent a second surgery on his right hip on July 29, 2015 at Cleveland Clinic Hospital in Cleveland, Ohio, to repair a fracture of the femoral shaft and complete the second stage of the revision surgery. (Ex. 6, Operative Report July 29, 2015.)

Plaintiff filed his complaint with this Court as part of the MDL on July 18, 2017. (Complaint at 1.) Plaintiff alleges strict product liability, negligence, breach of express and implied warranties, violation of Ohio Uniform Deceptive Trade Practices Act, and loss of consortium. *Id*. at 8-15.

## II. STANDARD OF REVIEW

Summary judgment should be granted when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court examines the record in the light most favorable to the non-moving party and draws all legitimate inferences in his favor. *Perry v. Bath & Body Works*, *LLC,* 993 F. Supp. 2d 883, 896 (N.D. Ind. 2014). To defeat summary judgment, a non-movant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013).

## III. CHOICE OF LAW

In MDL matters, a federal court sitting in diversity applies the law, including choice-of-law rules, of the state where the case originated. *Hayes v. Actavis, Inc. (In re Watson Fentanyl Patch Prods. Liab. Litig.)*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013); *see also Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). For cases that were filed in other district courts and then transferred to the MDL, the choice-of-law rules that apply are those of the state where the action was originally filed. *See In re Air Crash Disaster near Chicago*, 644 F.2d 594, 610 (7th Cir. 1981); *Hayes v. Actavis, Inc*. *(In re Watson Fentanyl Patch Prods. Liab. Litig.)*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013). Where a case has been directly filed in the MDL, the MDL court should treat the case as if it had been filed in the state where the plaintiff purchased and was prescribed the product in a product liability suit. *Hayes*, 977 F. Supp. 2d at 888 (citing *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig*., 2011 U.S. Dist. LEXIS 39820 (S.D. Ill. Apr. 11, 2011)); *see also Faheem v. GlaxoSmithKline, LLC (In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.)*, 2012 U.S. Dist. LEXIS 111272 (E.D. Pa. Aug. 7, 2012); *but see In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 904 (E.D. La. 2007) (applying the choice-of-law rules of the MDL court to directly filed complaints).

Here, Ohio law provides the statute of limitations on Plaintiff's claims. Plaintiff filed his complaint directly with this Court as part of the MDL. (Complaint at 1.) He is a resident of Ohio and has been during all relevant times. (Ex. 3, Smith Dep. 10:4-5.) The M2a implant was purchased and prescribed to Plaintiff in Ohio. (Ex. 1, Operative Report, October 18, 2011.) The M2a implant was also implanted in Plaintiff in Ohio, and Plaintiff underwent revision surgery in Ohio. (Ex. 1, Operative Report, October 18, 2011.) Therefore, Ohio choice-of-law rules apply to Plaintiff's claims.

Ohio has adopted the Second Restatement of Conflict of Laws for its choice-of-law

analysis. *See Am. Interstate Ins. Co. v. G & H Serv. Ctr.*, 861 N.E.2d 524, 527 (Ohio 2007) ("The *Morgan* court adopted the Restatement in its entirety."); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-289 (Ohio 1984) (adopting Restatement). According to the Restatement, "[a]n action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (quoting Restatement (Second) of Conflict of Laws § 142(2) (1971 ed.)). As a result, Ohio applies its own limitations rules regardless of what substantive law applies to a claim. *See Dudek v. Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 834 (N.D. Ohio 2010) ("Ohio courts are required to apply Ohio's statute of limitations to an action filed in Ohio even if that action would be time-barred in another state."); *Capital One Bank (USA), N.A. v. Rodgers*, 2010 Ohio 4421, P18 (Ct. App. 2010) (same); *D.A.N. Joint Venture III, L.P. v. Armstrong*, 2007 Ohio 898, P28 (Ct. App. 2007) (same). Ohio's statutes of limitations therefore govern Plaintiff's claims.

## IV. PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff filed his complaint against Biomet on July 18, 2017, over five years after he was first implanted with the M2a implant in his right hip, alleging product liability claims under various theories, breach of express and implied warranties, negligent misrepresentation, fraud, and unjust enrichment. Plaintiff began experiencing hip pain in September 2012, and underwent revision surgery on May 15, 2015 to have his metal-on-metal implant removed. As Plaintiff was injured no later than September 2012, and should have investigated his claim no later than the May 15, 2015 revision surgery, yet did not file until over two years later on April 18, 2017, his claims are time-barred.

### A. Plaintiff's product liability claims are time-barred

In Ohio, the statute of limitations period for product liability claims is two years from

when the claim accrues. O.R.C. Ann. 2305.10(A). The claim typically accrues at the time of injury. *Id*. In the case of "ethical medical devices," defined by statute as prescription medical devices regulated by the FDA, or exposure to chromium, the claim accrues upon the earlier of the "date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure" or when the plaintiff is informed by a competent medical authority that the plaintiff has an injury related to the exposure. O.R.C. Ann. 2305.10(B)(1)-(2), 2307.71(A)(5).

In the medical device context, a revision surgery puts a patient on notice of a claim for statute of limitations purposes. *See Griffin v. American Med. Sys.*, 1997 U.S. App. LEXIS 622 (6th Cir. Jan. 7, 1997) (removal of prosthesis put plaintiff on notice that device might be defective even though he was not informed at that time that it was defective); *Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d 888, 892 (N.D. Ohio 1999) (surgery to remove defective components of device put plaintiff on notice). As long as the plaintiff is aware of a problem with the implant prior to having it removed, however, the claim can accrue even before a revision surgery. *See Vaccariello v. Smith & Nephew Richards, Inc.*, 2000 Ohio App. LEXIS 3516 (Ohio Ct. App., Aug. 3, 2000) (news report put plaintiff on notice of claim even though medical device not yet removed); *Smith v. Osteomed, Inc.*, 1999 Ohio App. LEXIS 1610 (Ohio Ct. App., Apr. 8, 1999) (accrual started when plaintiff told by doctor that implant had fractured and needed to be removed, not at time of later revision surgery).

Plaintiff's claim therefore accrued when the plaintiff knew or should have known that he was injured and that his injury was related to the M2a implant, which here occurred no later than May 7, 2015 when he discussed his revision surgery to remove the implant with his physician. The record shows that Plaintiff was implanted with the M2a implant in his right hip on October

18, 2011. (Ex. 1, Operative Report, October 18, 2011.) Plaintiff first began experiencing pain and swelling in his right leg around September 2012. (Ex. 3, Smith Dep. 56:8-19.) He was told by his surgeons on or around May 7, 2015 that he needed to have his implant removed. (Ex. 5, Operative Report May 15, 2015.) He had revision surgery to have the M2a implant removed on May 15, 2015, and the surgeon noted the possibility of metal-related complications in the operative report. (Ex. 5, Operative Report May 15, 2015.) Plaintiff therefore suffered injury as early as September 2012, and knew or should have known that his injury was related to the M2a implant by May 15, 2015. Therefore, his claim accrued, at the latest, on May 15, 2015. Plaintiff filed this action on July 18, 2017, over two years after he was injured and his claim accrued.

That Plaintiff was told he had an infection in the implant does not save his claims. Ohio has specifically addressed the accrual date for an action involving an implant by statute, which requires only that the Plaintiff knew or should have known through the exercise of reasonable diligence that "the plaintiff has an injury that is related to the exposure" to the implant. O.R.C. Ann. 2305.10(B)(1)-(2) The statute of limitations begins to run even before Plaintiff has actual knowledge that the implant is defective as long as the plaintiff is on notice, such as through having surgery to remove the implant. *Cf. Griffin v. American Med. Sys.*, 1997 U.S. App. LEXIS 622 at *5. Removal of an implant alerts a plaintiff that the implant might be defective. *Id*. Here, Plaintiff testified at his deposition that he believes the sole basis for his lawsuit is that his Biomet implant caused his infection. (Ex. 3, Smith Dep. 59.) If that is so, then the removal of the implant as a result of the infection, and diagnosis that the implant was infected, put Plaintiff on notice that his injury was related to exposure to his implant. In fact, Plaintiff pleads in his complaint that he became aware "of the connection and/or nexus between his injuries and the above-described negligent design" at the time of his "first revision surgery"—Plaintiff's first

revision surgery was on May 15, 2015, over two years before he filed this lawsuit. (Complaint ¶ 61.; Ex. 3, Smith Dep 75: 20-25; Ex. 5, Operative Report May 15, 2015.) Further, the fact that he had a revision surgery to remove the implant was sufficient to put him on notice of an injury relating to the implant, and if he had exercised reasonable diligence and reviewed the operative report he would have seen that the possibility of a metal-related pseudotumor was raised by his surgeon during the operation. As Plaintiff knew or should have known of an injury related to exposure to his Biomet implant no later than his May 15, 2015 revision surgery, and did not file this lawsuit until more than two years later, his product liability claims are time barred. [1] *See Brown v. Biomet Ortho., LLC*, 3:14-cv-01470-RLM-MGG, Dkt. 168 at 12 (N.D. Ind. Mar. 26, 2017) (discovery rule did not save untimely claim when reasonable investigation would have uncovered that Biomet manufactured her implant); *see also Miles v. Biomet Ortho., LLC*, 3:14-cv-01983-RLM-MGG, Dtk. 140 at 12 (claim accrued pursuant to discovery rule no later than when the plaintiff became aware that she had injuries related to her Biomet implant and contemplated suing Biomet).

**B. Plaintiff's remaining claims are barred**

Plaintiff's remaining claims fall under the Ohio Product Liability Act (OPLA) and are likewise time-barred. Under Section 2305.10(A), all product liability claims are subject to the two-year statute of limitations. The statute incorporates the Ohio Product Liability Act's

---

[1] Plaintiff has not pleaded fraudulent concealment as grounds to toll the statute of limitations. As the Court stated in its December 10, 2013 Scheduling Order, "I think a deadline for amending the pleadings is essential for the rest of the deadlines to be meaningful." (3:12-MD-2391, Dkt. 1117 at 10.) The Court established that deadline as the later of 90 days from the Order (long since passed) or 90 days from the date of Biomet's answer. Biomet filed answers for this Plaintiff over 90 days ago. (Dkt. 6.) Plaintiff is therefore barred from amending his complaint to include fraudulent concealment pursuant to the Scheduling Order. In any event, as this Court previously recognized, there is no evidence that Biomet has hidden the potential risk of metallosis from the public. *Cutter v. Biomet, Inc.*, No. 3:15-cv-00434-RLM-MGG, Dkt. at 14 (N.D. Ind. Mar. 26, 2017).

definition of "product liability claim":

> "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> > (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
> >
> > (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
> >
> > (c) Any failure of that product to conform to any relevant representation or warranty.

O.R.C. Ann. 2305.10(F)(2), 2307.71(A)(13). Plaintiff's remaining claims for negligence and breach of express warranty are based on alleged defects in the M2a-38™ and compensatory damages. They are all therefore subject to the same two-year statute of limitations for the OPLA and time barred as discussed above. To the extent Plaintiff is attempting to assert common law claims outside of the OPLA, they have been abrogated by the OPLA. O.R.C. Ann. 2307.71(B); *Parker v. Ace Hardware Corp.*, 2018-Ohio-320, at *13-15 (Ohio Ct. App. Jan. 26, 2018).

To the extent Plaintiff argues his warranty claims are brought pursuant to Ohio's version of the U.C.C., he has not pleaded that his warranty claims are statutory and so cannot invoke the U.C.C. in opposition to a summary judgment motion. *Parker*, 2018-Ohio-320, at *14-15; *see also Miller v. Alza Corp.*, 759 F. Supp. 2d 929, 944 (S.D. Ohio 2010). In any event the warranty claims are covered by the four-year period provided by the Ohio U.C.C, and the claim accrued at the time of delivery. O.R.C. Ann. 1302.98 and accrued at the time of delivery. Thus, Plaintiff's warranty claims began to run at the latest when the M2a-38™ was delivered and implanted in 2009, over four years before he brought this suit. *See Slater v. Biomet*, Inc. No. 3:14-cv-01055-RLM-MGG, AT (N.D. Ind. Mar. 26, 2017) (finding tender of delivery was made at the implant

surgery, applying North Carolina's U.C.C. statute); *see also Cutter v. Biomet, Inc.*, No. 3:15-cv-00434-RLM-MGG, Dkt. 90 at 13 (N.D. Ind. Mar. 26, 2017) (applying Washington's U.C.C. statute).

Regarding his statutory claim, Ohio courts have concluded that medical devices are not "consumer goods" under the Ohio Consumer Sales Protection Act ("OCSPA"). *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798, n.2 (N.D. Ohio 2012) (explaining in a footnote that the defendant's "prescription medical device is not a good for personal, family or household use and thus is not a consumer good as defined by the OCSPA."); *Williams v. Boston Scientific Corp.*, 3:12CV1080, 2013 U.S. Dist. LEXIS 43427, 2013 WL 1284185, *6 (N.D. Ohio Mar. 27, 2013) (citing *Reeves* and explaining that the medical device was not a "consumer good" because the hospital, not the plaintiff was the consumer under the OCSPA). Accordingly, Plaintiff does not have standing to bring an OCSPA claim for the Magnum, and his claim should be dismissed.

In any event, a plaintiff asserting a claim pursuant to the OCSPA must demonstrate "that he or she was aware of the alleged misrepresentation before or during the purchase." *Marlowe v. Nature's Bounty Co.*, No. 1:17 CV 332, 2017 U.S. Dist. LEXIS 80499, at *6 (N.D. Ohio May 25, 2017). Here, Plaintiff had no knowledge of any statements by Biomet, and therefore cannot assert this claim. Finally, the OCSPA contains a two-year limitations period running from "the occurrence of the violation which is the subject of suit," O.R.C. § 1345.10(C), and no discovery rule applies, *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 U.S. Dist. LEXIS 124086, at *8 (N.D. Ohio Aug. 31, 2012). Plaintiff's M2a-38 was implanted in 2011 and his statutory consumer protection suit was time barred when he brought it in 2017.

Lastly, Co-plaintiff Michelle Smith seeks to recover for the loss of consortium between her and her husband. That claim cannot be sustained. A claim for loss of consortium is

derivative in that the claim is dependent upon the defendant having committed a legally cognizable tort upon the spouse who suffers bodily injury. *McClary v. M/I Schottenstein Homes, Inc.*, 2004-Ohio-7047, ¶ 63, 2004 Ohio App. LEXIS 6504 (Ct. App. Dec. 23, 2004). Absent a legally cognizable tort upon Plaintiff James Smith, Co-plaintiff's loss of consortium claim must also fail.

**CONCLUSION**

For the above reasons, Biomet's motion for summary judgment should be granted and all of Plaintiffs' claims dismissed.

DATE: July 9, 2018

Respectfully Submitted,

/s/ Erin Linder Hanig

John D. LaDue (19039-71)
Erin Linder Hanig (29113-71)
LADUE CURRAN & KUEHN LLC
100 E. Wayne St, Suite 300
South Bend, IN 46601
Tel: (574) 968-0760
jladue@lck-law.com
ehanig@lck-law.com

John D. Winter
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
jwinter@pbwt.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on July 9, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Erin Linder Hanig
Erin Linder Hanig (29113-71)